UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE DUNGEY,

    Plaintiff,                               Civil Action No. 12-10008

v.                                         HON. VICTORIA A. ROBERTS
                                               U.S. District Judge
                                               HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Nicole Dungey brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #8] be DENIED.

## **PROCEDURAL HISTORY**

On November 19, 2007, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging an onset of disability date of March 31, 2007 (Tr. 127). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on June 8, 2010 in Lansing, Michigan (Tr. 31). Administrative Law Judge ("ALJ") B. Lloyd Blair presided. Plaintiff, represented by Mikel Lupisella, testified, (Tr. 35-44), as did Norman Abeles, Ph.D., a vocational expert ("VE") (Tr. 44-47). On July 30, 2010, ALJ Blair determined that

Plaintiff was not disabled, finding that she could return to her previous work (Tr. 21-22). On November 1, 2011, the Appeals Council denied review of the claim (Tr. 1-6). Plaintiff filed for judicial review of the final decision on January 2, 2012.

## BACKGROUND FACTS

Plaintiff, born April 20, 1973, was 37 when the ALJ issued his decision (Tr. 22, 127). She completed four or more years of college and worked previously as a supervising member of a plant fire brigade (Tr. 159, 164-165). Her application for benefits alleges disability as a result of her father's "exposure to agent orange," a congenital brain cyst, and back, knee, and foot problems (Tr.157).

### A. Plaintiff's Testimony

Plaintiff testified that she stood 5'2" and weighed 196 pounds (Tr. 35). She stated that she held a valid driver's license and was able to drive (Tr. 35). She reported that she held a Master's degree and had worked at General Motors until February 26, 2010 when she sustained injuries in a fall (Tr. 36). *Plaintiff's counsel interjected that his client was diagnosed with a heart condition subsequent to the February, 2010 fall and had recently undergone "open heart surgery"* (Tr. 36). In response to questioning by counsel, Plaintiff stated that she lived with her husband and four children in a two-story house (Tr. 37). She acknowledged that she had been off work from March 31, 2007 to May, 2008, then off work again from October 27, 2008 until the end of September, 2009 (Tr. 38). She stated that during these periods, she was unable to work because of right foot, back, and wrist problems (Tr. 38). She added that the conditions created sleep disturbances (Tr. 38).

Plaintiff alleged that symptoms of Carpal Tunnel Syndrome ("CTS") created problems gripping and grasping (Tr. 39). She stated that before her February, 2010 fall, she could walk a maximum of half a block and stand for five minutes (Tr. 39). She alleged that

she was unable to lift more than 10 pounds (Tr. 39). She stated that medication for back pain caused stomach problems (Tr. 40). She indicated that during this period of disability, she would spend her day attending to family or school issues, adding that she and her husband were going through the process of adopting a child (Tr. 40). She stated that she coped with leg swelling by elevating her legs regularly (Tr. 41).

Plaintiff testified that between May and October, 2008, she worked as a coordinator in charge of ordering parts for the plant, but lost the job when the individual previously holding the position returned to work (Tr. 43). She alleged that she experienced symptoms of CTS during this period (Tr. 43).

### B.  Medical Evidence

#### 1. Treating Sources

In April, 2006, Todd Best, M.D., noted that Plaintiff experienced severe right foot pain after doing "a lot of walking on concrete" (Tr. 212). Plaintiff reported that she currently stretched, walked on a treadmill, and went to the gym for exercise (Tr. 212). Dr. Best noted that Plaintiff experienced knee pain and reflex sympathetic dystrophy ("RSD") in the right foot as a result of injuries in a 2003 car accident (Tr. 213). Dr. Best opined that work-induced right shoulder problems had likely been exacerbated by the same car accident (Tr. 213). He noted that Plaintiff currently worked 40 hour each week in a "call center" and was finishing her Master's degree (Tr. 213). In July, 2007, Plaintiff received treatment for pneumonia (Tr. 192). The following month, Plaintiff sought treatment for right foot pain and numbness (Tr. 193-194). The same month, imaging studies of the right foot showed the presence of bunions but was otherwise unremarkable (Tr. 215). In August, 2007, Dr. Best found that Plaintiff should be restricted to lifting no more than 10 pounds and sedentary (sitting) work (Tr. 197). In March, 2008, Dr. Best prescribed Flexeril for hip, knee, and foot

pain (Tr. 227). He noted that recent imaging studies of the spine showed disc space narrowing but no other abnormalities (Tr. 227, 230).

In April, 2010, Plaintiff underwent surgery for pericardial effusion (drainage), which was performed without complications (Tr. 231, 233-235). Her condition was deemed "stable" in the weeks following surgery (Tr. 240). Followup treatment notes from the next month state that Plaintiff had "no complaints" (Tr. 238). She was advised to lose weight (Tr. 238).

### 2. Material Submitted After the ALJ's July 30, 2010 Administrative Opinion[1]

A March, 2010 MRI of the left knee showed a "radial-type tear" as a result of the February, 2010 fall (Tr. 284, 370). The same month, imaging studies of the chest predating the drainage surgery showed "moderate to large pericardial effusion" (Tr. 368). In the month following the surgery, an echocardiogram showed the absence of pericardial effusion (Tr. 373). June, 2010 treating notes state that Plaintiff was on "short-term" disability from General Motors, but also owned "a business that provide[d] supplies for weddings" (Tr. 342).

---

[1] The medical records contained in transcript pages 243 to 377 were submitted for Appeals Council consideration on October 11, 2010, well after the ALJ's decision (Tr. 242). Where, as here, the Appeals Council denies a claimant's request for a review of an application based on new material (Tr. 1-3), the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan,* 2 F.3d 692, 696-696 (6th Cir.1993). Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

Because Plaintiff does not rely on the later provided material in arguing for remand and has not provided good cause for the late submission of this evidence, it cannot be considered in deciding whether remand is appropriate. Moreover, these records do not provide a basis for reconsideration of the ALJ's decision, even assuming that she had provided good cause for the tardy submission

July 9, 2010 treatment notes state that she did not experience symptoms of pericardial effusion, but complained of wrist pain (Tr. 341). In October, 2010, Plaintiff was advised to under knee surgery (Tr. 255). Anthony J. Meier, M.D. noted that her station and gait were normal (Tr. 255).

### C. Vocational Expert

VE Norman Abeles classified Plaintiff's former work performed between 1991 and 2003 as a plant protection fire brigade trainee as light and semiskilled and work between November, 2004 to March 2007 as a team coordinator as sedentary and semi-skilled[2] (Tr. 45). The ALJ then posed the following question to the VE:

> I'd like to assume a hypothetical individual who can meet the demands of light work, but who would require a sit/stand at will option. The individual should never use ladders, scaffolds or ropes. Should only occasionally use ramps or stairs, stoop, kneel, crouch or crawl. Should avoid walking on uneven surfaces. Who can frequently but not constantly handle and feel. . . . [C]ould such an individual be able to do claimant's past relevant work? (Tr. 45-46).

The VE responded that the above-stated limitations would not prevent the hypothetical individual from performing Plaintiff's past relevant work (Tr. 46). He stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT"), noting that the DOT is silent as to a sit/stand option (Tr. 46). He stated that his findings regarding the sit/stand at will option were based on his own professional experience and government-provided job statistics (Tr. 46). In response to questioning by Plaintiff's

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

counsel, the VE testified that if the hypothetical individual needed to take unscheduled breaks to nap or elevate her feet, all competitive employment would be precluded (Tr. 47).

### D.     The ALJ's Decision

Citing the medical transcript, ALJ Blair found that although Plaintiff experienced the severe impairments of a "reflex sympathetic dystrophy - right foot; pericardial effusion, status-post drainage; knee pain; chronic low back pain; [and] carpal tunnel syndrome," none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 18).  Consistent with the hypothetical question to the VE, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional limitations:

> [C]laimant requires the option to sit or stand at will.  She should never use ladders, scaffolds, or ropes; occasionally use ramps and stairs, stoop, kneel, crouch, or crawl; avoid walking on uneven surfaces; and frequently, but not constantly, handle and finger (Tr. 19).

Adopting the VE's job findings, he found that Plaintiff could perform her past relevant work as a plant protection brigade member and team coordinator, and that she could do both jobs as previously performed (Tr. 21).

The ALJ rejected Plaintiff's allegations of disability, noting that prior to her February, 2010 fall, "she was working in a non-restrictive position" (Tr. 21).  He noted that Plaintiff stopped working in October, 2008 because her employer "brought a retired person back" to fill her position, rather than because of disability (Tr. 21).  The ALJ also observed that following the April, 2010 heart surgery, her condition remained stable (Tr. 21).  He noted that "not a lot" of objective evidence supported Plaintiff's claims of back, knee and foot problems (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Vocational Expert Testimony

Plaintiff argues that the hypothetical question to the VE did not account for her full degree of impairment. *Plaintiff's Brief* at 6-8, *Docket #8.* She contends, in effect, that the ALJ's failure include all of her relevant limitations in the question invalidated the VE's testimony that she could return to her work as either a plant protection brigade worker or team coordinator. *Id.* (citing Tr. 46).

Plaintiff argues correctly that a hypothetical question must include the claimant's relevant limitations. *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987) holds that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's impairments. However, Plaintiff's contention that the ALJ erred by not including her discrete medical conditions (shoulder pain, foot and knee problems) in his question to the VE is without merit. *See Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir.2004)(hypothetical question need not list all of a claimant's maladies verbatim); *See also Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). Instead, the ALJ accounted for Plaintiff's limitations by precluding the use of ladders, scaffolds, or ropes and walking on uneven surfaces (Tr. 45-46). She was also given a sit/stand option and limitations on manipulative functions (Tr. 45-46). Plaintiff's argument for remand based on purported flaws in the vocational testimony is also undermined by the fact that the ALJ's

Step Four finding that she could return to her past work did not require the ALJ to elicit job findings or other testimony from the VE. *See Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *Mays v. Barnhart,* 78 Fed. Appx. 808, 813–814 (3rd Cir.2003)("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ").

I also disagree with Plaintiff's related argument that because the DOT does not include the specific title of "plant protection fire brigade" she is entitled to a remand. "[T]he Social Security Administration imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'" *Lindsley v. Commissioner of Social Sec.,* 560 F.3d 601, 606 (6th Cir. 2009)(citing S.S.R. 00-4p, 2000 WL 1898704, at *4). As required, the ALJ asked the VE if his testimony conflicted with the information found in the DOT (Tr. 46). The VE responded that his testimony did not (Tr. 46). Having made the obligatory inquiry, the ALJ was not obliged to further challenge the veracity of the vocational testimony. *Lindsley* at 606. "'Nothing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Id.* (citing *Martin v. Comm'r of Soc. Sec.,* 170 Fed.Appx. 369, 374 (6th Cir. March 1, 2006)). Notably, Plaintiff's counsel at the time did not dispute this portion of the VE's job findings. As such, the ALJ's adoption of the uncontradicted testimony does not provide grounds for remand.[3] *Id.*

Further, even assuming that the finding that Plaintiff could return to the plant protection fire brigade job constitutes error, she does not challenge the VE's testimony that

---

[3] While Plaintiff does not raise such an argument, the "brigade" position, by her own account, required her to lift up to 25 pounds, whereas the maximum weight in the "light" exertional category is 20 pounds (Tr. 159)**.** 20 C.F.R. § 404.1567(b-c)**.**

she was *also* capable of her former work as a team coordinator (Tr. 46). Aside from the fact that she has not disputed this finding, her acknowledgment that the coordinator position required no more than sedentary level responsibilities (Tr. 43) places this work well within the parameters of the hypothetical question and RFC. Her assertion that the VE did not state the exertional level of the coordinator position is flatly contradicted by the VE's testimony that the job was sedentary and semiskilled (Tr. 45). It is also worth noting that Plaintiff was apparently capable of performing the coordinator position for a significant period after the 2007 alleged onset of disability. Moreover, Defendant correctly notes that although Plaintiff takes issue with the VE's statement that the DOT does not include mention of sit/stand option, her counsel at the administrative hearing failed to contest the VE's testimony that the sit/stand findings were therefore based on his own professional experience and government employment related publications (Tr. 46). *Defendant's Brief* at 6, *Docket #11* (citing *Putnam v. Astrue*, 2011 WL 5239225 (S.D. Ohio Sept. 16, 2011)).

In closing, it should be noted that the recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's limitations. However, because the ALJ's decision was well articulated and easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #8] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              **s/ R. Steven Whalen**
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Date: January 4, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 4, 2013.

                                              s/Johnetta M. Curry-Williams
                                              Case Manager